# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Cause No:_____

| | | |
|---|---|---|
| Margaret Cimini, | ) | In a petition for removal from the |
| | ) | Probate and Family Court of |
| Plaintiff (Respondent below), | ) | Middlesex County, Massachusetts |
| | ) | |
| v. | ) | |
| | ) | |
| Mark Cimini, | ) | State court cause no.: 97D-XXXX-DV1 |
| | ) | |
| Defendant (Petitioner below), | ) | |
| | ) | |
| and, in re: the support and welfare | ) | |
| of Jonathan Cimini. | ) | Honorable Judge |

## Notice of Petition and Verified Petition For Warrant Of Removal

Comes now the Defendant, Mark Cimini, and in direct support of this request for removal of the above-encaptioned state court cause into, and through, the various jurisdiction of this United States District Court provided under at least 28 USC § 1331, 28 USC § 1367, 28 USC 1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28 USC § 1446, and on the federal questions involved, herein alleges, states, and provides the following:

<u>JURISDICTION</u>

1. This District Court of the United States has original, concurrent, and supplementary jurisdiction over this cause of action, pursuant to the authorities cited above, including, but not limited to the following, to-wit: 28 USC § 1331, 28 USC § 1367, 28 USC 1441(b), 28 USC § 1441(c), 28 USC § 1441(e), 28 USC § 1443(1), 28 USC § 1443(2), and/or 28 USC § 1446.

2. The District Court of the United States is an Article III court with authority to hear questions arising under the Constitution, Laws, and Treaties of the United States, including but

1

not limited to the Bill of Rights, the Ninth Amendment, the Eleventh Amendment, the original Thirteenth Amendment, the Fourteenth Amendment, the International Covenant on Civil and Political Rights, and the Universal Declaration of Human Rights, with Reservations. *See* the Article VI Supremacy Clause of the Constitution of the United States of America, as lawfully amended (*hereinafter* "U.S. Constitution").

## RESERVATION OF RIGHTS DUE TO FRAUD

3. Defendant hereby explicitly reserves his fundamental Rights to amend this and all subsequent pleadings, should future events and/or discoveries prove that he has failed adequately to comprehend the full extent of the damages which he has suffered at the hands of the Respondent, the state court, and other involved parties, both named and unnamed, now and at all times in the future. *See* Rules 8, 15, and 18 of the Federal Rules of Civil Procedure.

## RECORD OF STATE PROCEEDINGS

4. Defendant is now proceeding on the basis of the presumption that the Massachusetts state court record will be made available to this Honorable Court upon Notice and Demand for Mandatory Judicial Notice, pursuant to Rules 201 and 902 of the Federal Rules of Evidence, the Full Faith and Credit Clause contained under Article IV of the U.S. Constitution, and 28 U.S.C. § 1449.

## INCORPORATION OF PRIOR PLEADINGS

5. Defendant hereby incorporates by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein. (H.I).

## ALLEGATIONS

6. Defendant specifically complains on matters which go to related federal questions, such as federal criminal jurisdiction within the several States of the Union, and the denial or the inability

2

to enforce, in the courts of a State, one or more rights under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof, to-wit:

7. Defendant complain of various systematic and premeditated deprivations of fundamental Rights guaranteed by the U.S. Constitution, by the Constitution of the Commonwealth of Massachusetts, as lawfully amended (*hereinafter* "Massachusetts Constitution"), and by federal law, and which deprivations are criminal violations of 18 U.S.C. §§ 241 and 242. *See also* 28 U.S.C. § 1652.

8. A slippery slope from Common Law parental property rights to pure judicial discretion can be found in the historical case law. The current point in history on this slope now removes all Common Law framework, rights, and protections in Probate and Family Court divorce actions; the innocent party is punished, the right of reciprocals is abolished and an illegal transfer of wealth scheme is substituted, a fit parent, usually the male parent, is removed from the child's life, and the reinvention of debtor's prison and peonage. The next several paragraphs attempt to discuss this "slippery slope" argument from the Common Law rights, privileges, and immunities in the context of Federal rights.

9. Family rights predate both the US and State Constitutions. *All parental rights and family law are historically covered under English Common Law*, which was adopted by the Continental Congress, later by the United States, and by the states, specifically this Commonwealth, under the articles of this Federal Republic. There is no organic family law or parental rights authority within either the State or Federal Constitutions; furthermore, there is no organic authority in our Constitutional Republic that permits conversion of these rights. Family rights do not 'flow' from the state but should be protected by the state (see Federalist Papers argument below).

3

Additionally, the Federal government has repeatedly stated that these family rights fall under the *protection* of the fifth and fourteenth Amendments to the US Constitution.

10. The Common Law's importance can be seen in *Heydon's Case*, 3 Co. Rep. 7 a, 76 Eng. Rep. 637 (Ex. 1584) *Pierson, Et al. v. Ray Et al.* (1967) 386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 where it was noted that "Congress of course acts in the context of existing common-law rules, and in construing a statute a court considers the 'common law' before the making of the Act."

11. The importance of property in a Constitutional Republic per *Billings v. Hall* (1857), 7 C. and many other cites as - "Right of protecting property, declared inalienable by constitution, is not mere right to protect it by individual force, but right to protect it by law of land, and force of body politic."

12. As noted in Coppage v. State of Kansas, 236 U.S. 1; 35 S. Ct. 240; 59 L. Ed. 441 (1915) "The Fourteenth Amendment recognizes "liberty" and "property" as co-existent human rights and debars the States from any unwarranted interference with either."

13. At that time of the adoption of the State and Federal Constitutions, the Common Law protected children as a right of property with respect to their parents; with all the protections of property, and more, (*hereinafter* 'Common Law property'). This was done to limit government intrusion on family matters. Fathers had *absolute* title, now referred to as custody, to their children even after divorce. This right was in part based on the Common Law right of reciprocals, i.e., the parent with custody had the Common Law obligation to support it. Child Support did not exist under the Common Law and alimony only existed to the "innocent party."

14. The strictness of this right of property is discussed In re Campbell, 130 Cal. 380; 62 P. 613; 1900 Cal., "The father's right, at least so far as the services of the child are concerned, is

4

strictly a property right, for the loss of which -- as in the case of servants generally -- an action could at common law be maintained; and in other respects the right, though not commonly spoken of as such, is of essentially the same nature as the right of property. For though the subject of the right is not salable, it is valuable, and of all species of property the most valuable to the parent. Hence it is a mistake to suppose that the right of the father is merely fiduciary. It is that; but it is also -- like the right of the child in the father -- a right vested in him for his own benefit, and of which it would be a personal injury to deprive him. *The right must therefore be regarded as coming within the reason, if not within the strict letter, of the constitutional provisions for the protection of property.*"

15. In Booth v. Booth, (1945) 69 Cal. App. 2d 496, 159 P.2d 93, this right of property is clear - "The philosophy of all these cases is based upon the early rule of *In re Campbell*, 130 Cal. 380 [62 P. 613], that the right of a parent to the use of a minor child is a *right of property of which a parent cannot be deprived unless the court finds that he or she is "unfit."*

16. And again: "The ancient Roman law held children to be the property of the Father, and placed them, in relation to him, in the category of things, instead of that of persons; and he had over them the power of life and death; See 1 Bla Conn. 452; the Etna, 1 Ware, 462, 465. By the common law, the father the father has a paramount right to the custody and control of his infant children, upon the principle that he is in duty bound by the law of nature as well as of society, to maintain, protect, and educate them; People V. Olmstead, 27 Barb. 9; Henson v. Walts, 40 Ind. 170; Cole v. Cole, 23 Iowa, 433; Johnson v. Terry, 34 Conn. 259; MccBride v. McBride, 1 Bush, 15; State v. Stigall, 22 N.J. L 286; Verser v. Ford, 37 Ark. 27; Miller v. Wallace, 71 Ga 479; Rex v. Greenhill, 6 Nev & M. 244; 4 Ad. & E. 624; Hakewill's Case, 22 Eng. L. & Eq. 395.

17. And again: "It is a well settled doctrine of the common law, that the father is entitled to the custody of his minor children, as against the *mother* and *every body else*; that he is bound for their maintenance and nurture, and has the corresponding right to their obedience and their services. 2 Story's Eq., secs. 1343-1350; 2 Kent's Com. 193; 1 Bl. Com. 453; <u>Jenness v. Emerson</u>, 15 N. H. 486; <u>Huntoon v. Hazelton</u>, 20 N. H. 389. By statute of 12 Car. 2, ch. 24 <u>State v. Richardson</u>, 40 NH 272.

18. In the Massachusetts case, <u>Commonwealth v. Briggs</u>, 33 Mass. (16 Pick.) 203, it was again noted that "In general, as the Father is by law clearly entitled to the custody of his child, the court will so far interfere as to issue the writ of Habeas Corpus and inquire into the circumstances of the case, in order to prevent a party entitled to the custody of a child from seeking it by force or stratagem. And the court will feel bound to restore the custody to the father, where the law has placed it, unless in a clear and strong case of unfitness on his part to have such custody. "

19. In the case of <u>Purinton v. Jamrock</u>, 195 Mass. 187; 80 N.E. 802; (1907), the mother had given the Commonwealth custody of the child six years previously and had multiple opportunities to regain custody during that time but did not act. This Catholic mother filed a motion when the Protestant foster parents petitioned to adopt the child. The court took time to discuss the parental 'rights of property' and went to great detail noting how the mother had forfeited these rights and that *under these circumstances* the state could act "in the best interest" of the child. The practice of *parens patriae* had been limited to such case where the state either had custody of the child or had rescued the child from abusive situations.

20. The "Tender Years" doctrine – having no foundation at Common or Constitutions Law and later declared unconstitutional - first appeared in <u>Helms v. Franciscus</u>, 2 Bland Ch.(Md.) 544

(1830). This doctrine appears to mark the beginning of a maternal bias in the courts which has persisted to this day; some say that the current *de facto* incarnation of the "Tender Years" doctrine now favors the mother till the child is 18 or 23 years old.  Prior to this ruling, the Common Law property right was respected, as was the absolute custody directive upon divorce.

21. In Mercein v. Barry, 25 Wend. 64; 1840, the three different courts iterated between two different positions.  The initial court decision was based on the "tender years doctrine"; then being removed to the state Supreme Court, that court found according to the Common Law fiat that "the father has a paramount right to the custody, which no court is at liberty to disregard." This was then reversed in the Court of Errors, which expressed discomfort with the notion that the father " ... was entitled to the entire and absolute control and custody of the child, and to exclude from any share in that control and custody the mother of that child." This decision used Austrian and British developments in custody law to ultimately decide the case based on "tender years doctrine."  Neither of these countries had/have constitutional provisions respecting the rights of property.

22. This destruction of the Common Law property right seems complete in Osterhoudt, v Osterhoudt, 48 A.D. 74; 62 N.Y.S. 529; 1900 N.Y. App. Div., where the judge stated: "I think it may be said that the time has passed when courts of law are bound to recognize a right of property in children as belonging to parents, ..." without citing any authority - Constitutional, Common Law, or concise rule of law - to support his claim.

23. Under Common Law the custody rules had been: first, to a fit father, failing that, second, to a fit mother, failing that, third, to a third party that the parent(s) had contracted with, failing that, fourth, relatives, failing that, if the child was a minor needing protection, finally, the state could intercede as *parens patriae*.  A very clear and non-vague set of rules.  As noted above, the

notion of Child Support was not part of the Common Law. If for example the father was found 'unfit' the custody, and hence the obligation to support the child(ren), passed to the mother, i.e., no child support. And again alimony was only available to the innocent party.

24. Slowly, yet completely, the "best interest" doctrine became applied to every case because these distinguishing features of earlier case were forgotten or ignored and the Common Law property rights were dismissed. *Parens patriae* supplanted the Common Law property protections and well defined custody succession which initially allowed no judicial discretion except as a last resort; this supplanted a fixed set of Common Law rules, to where the court allotted itself "wide discretion" in all cases lacking any clearly defined rules, and ignored Common Law rights and immunities. These courts did not look at the distinguishing features of the previous cases or address the rights of property. This slippery slope has transformed absolute right of property into absolute judicial discretion and has displaced all Common Law framework, rights, and immunities from Probate Courts. One must ask where else the state will replace the Common Law with doctrine that punishes the innocent[1].

25. This transition from Common Law fiat to judicial discretion occurred well after the signing of the Constitutions and involved a Common Law right of property, hence it should have invoked the Federal right to a trial by jury under a Common Law venue (since children are certainly 'worth' more than twenty dollars) to decide custody, but no such option existed or exists. Instead these decision are made solely based upon judicial discretion in courts of equity, yet *ALL Family Law issues originate under Common Law and any dispute is over Common Law property*. There is no Constitutional authority, Common Law provision, or any concise rule of law in a Constitutional Republic that allows the state to redefine a right of/to property. The

---

[1] "Better that ten guilty persons escape than that one innocent suffer," English jurist William Blackstone

conversion of a right into equitable jurisdiction is contrary to the US Constitution and hence those decisions are void.

26. Under the Common Law, since children are Common Law property, the state has unlawfully taken property when it separates a child from a fit parent. Clearly a Federal issue.

27. Furthermore, since said unlawful taking under color of law and color of authority results in Federal remuneration and is done to limit public welfare roles, creating a net revenue increase for the state, the state's actions invoke R.I.C.O. when depriving a fit parent of their Common Law property.

28. "The "Best Interest" doctrine is not only contrary to the Common Law but to Due Process, Equal Protection, Obligation of Contracts, and subjects the courts to be party to fraud. Seventy-five to eighty percent of divorces are initiated by women, with better than ninety-three percent chance of getting sole custody of the children, child support, at least half the joint property, and even alimony. These statistics and benefits hold even when the female litigant unilaterally broke the marriage contract. Under Common Law the innocent party was never punished or deprived of benefits. For example, under the "Best Interest" doctrine, a man can come home, find his wife 'with' another man or woman or just waiting for him with divorce papers. This man will be instantly removed from the residence by force, i.e., police, immediately become a visitor in his child(ren)'s lives, after the divorce or separation decree, will be designated a non-custodial parent, forced to surrender the house to his wife, split other real property and assets, forced to pay child support and perhaps alimony, provided limited visitation to his children, and left with not enough money to provide for a dwelling large enough to have bedrooms for his children to visit overnight. Also, he will find himself subject to the threat of prison, license suspension, garnishment of wages, restriction on where he can move, and even loose contact with his

children because the state fails to enforce the visitation schedule. These are all punishments, yet he was the innocent party in this. Oliver Wendell Holmes, Jr. in his book on the Common Law noted the following: "...punishment following wrong-doing is axiomatic, and is instinctively recognized by unperverted minds.[2]" The wrong-doing under Common Law was in the unilateral breaking of the marriage contract and/or adultery yet under the "Best Interest" doctrine this behavior is rewarded based on gender. As proof, there should be no doubt in anyone's mind that if the gender roles were reversed in the initial act, the gender-based outcome would have been the same. This "Best Interest" doctrine discriminates based on gender, punishes the innocent, and makes the court party to fraud by depriving an innocent person of children, property, assets, and future income.

29. Oliver Wendell Holmes, Jr., also put forth in his book, "The Common Law", the premise that the Common Law and Morality are coincident, giving additional weight to the maxim that ignorance of the law is no excuse. At least two issues of concern for the Federal courts. If this is moral connection to the Common Law is true then modification to the Common Law affects the moral fabric of society. Since there is a Federal issue of separation of church (a moral authority) and state (a legal authority), according to that separation the state must have extremely limited right to change the Common Law and indirectly effect moral changes to society if we truly have separation of church and state. Second, if this slippery slope of removing the Common Law in Family Law extends (or has already) to other areas of law within the Commonwealth, the citizens, for the sake of some new doctrine, will cease to have any Constitutional protections and the concise rule of law is at risk. Also, since "ignorance of the law is no excuse" is a Common Law maxim then it holds no meaning outside a Common Law framework.

---

[2] The Common Law, Oliver Wendell Holmes, Jr., Dover Publications, Inc., NY, 1991, Page 45

30. Vagueness violates the Federally protected rights of Due Process. Your Defendant's state court pleadings have challenged the vagueness[3] of the "best interest" doctrine in part by repeatedly providing statistics from government sources and reputable institutes that show fatherless children and children from single-female headed household are more likely to commit crimes, end up in jail, become pregnant as teens, have emotional disorders, abuse drugs and alcohol, more likely to divorced themselves, and that mothers are (eight-times) more likely to kill their children than fathers. The state has failed to address these issues or demonstrate how better than 93% sole custody awards to women under the "best interest" doctrine manifests itself in a child's life. The lack of concise rules to be followed by the judge is in direct contrast to the rules under Common Law, violates the concise rule of law, is a violation of Due Process, and because of the high sole custody rates to female litigants is proof that these laws discriminate based on gender (discussed below), is a violation of Equal Protection.

31. The United States Constitution's Fourteenth Amendment contains a recognized Right to Privacy. This fundamental Right to Privacy encompasses the Privacy Protected Zone of Parenting.

32. The Commonwealth's Income Based Child Support Domestic Relations Orders impermissibly infringe the fundamental Federal Right to Privacy, in the Privacy Protected Zone of Parenting.

33. In addition, your Defendant asserts that the Commonwealth's Income Based child support statutes impermissibly infringe the Property Interest right under the 14th Amendment of the Federal Constitution.

---

[3] Vague. Indefinite. Uncertain; not susceptible of being understood. For purposes of determining whether a statute is constitutionally infirm by reason of being vague, statue is "vague" if its prohibitions are not clearly defined; or if it does not provide explicit standards for its enforcement. (Black's Law Dictionary. Abridged Sixth Edition, 1991)

11

34. The state financial form divorced parents are forced to fill out not only demands accounting of very detailed weekly expenditures, but it even asks what kind of energy you are using to heat your dwelling with.

35. The Child Support formula do not show any relation to the Federal necessities requirements. Instead they require a linear proportion of a (male) parent's income. Several studies have conclusively shown that with increased income come increased 'free' spending monies but that the basic necessities do not increase with income; *necessities* remain relatively fixed. Also note, married parents are not required to spend a set proportion of their income on their children. Specifically in this case, the state does not mandate what I spend on my daughter.

36. Married or 'intact families' do not have anywhere near the same level of government intrusion. Federal Equal Protection requires that married and divorced parents be treated the same by the state.

37. If, as an example, your Respondent were to pass away right now, your Defendant would instantly be 'given custody' and no longer have to deal with the same level of government intrusion on the expenditures for my children. Also again note that the state does not mandate how much I have to spend on my daughter.

38. Federal and Common Law mandates necessities only. To wit, your Respondent, has two children from a previous marriage. She receives child support for these two children. When we divorced the amount of child support she was receiving from her first ex-husband was (tax free) one hundred and seventy-five dollars a week for the two children. I was required to pay (tax free) three hundred and sixty-five dollars for one child. This is a violation of Federal law — and in excess of fundamental legal requirements. Hence I was paying more than FOUR TIMES the amount, on a per child basis, for my son living in the same household, enjoying the same

12

standard of living as the other two children. Add to this that Jonathan spends more time with your Defendant (approx. half-time) than the other two children spend with their father. Jonathan was clearly not the recipient of the full amount of the child support your Respondent is forced to pay. Nor is it defensible, given the differing amounts, that the 'child support' meets the Federally mandated necessities requirement. The true 'Child Support' here is that Jonathan is with me approximately half time, has his own room, enjoys the company of his sister, your Respondent helps coach Jonathan's sports teams, help with his homework, encourage his endeavors, and I love and care for him.

39. The state is in the business of creating multiple second-class citizens, a direct violation of the Federal Equal Protection clause. My daughter, Taisya Nina Cimini, was born November 26, 2001. The mother of this daughter and I are married. Massachusetts forces me to discriminate between my two children and my children are treated unequally in direct violation of law[4]. In theory, my daughter is not due any less Constitutional protections because of the order of her birth; however in the eyes of the Commonwealth she is not afforded the same protections enjoyed by my son specifically because of the order of their births. It should also be noted that because your Defendant pays more for my son than your Respondent's first husband pays for his two children, the two children from your Respondent's first marriage also benefit from the unlawful child support order solely based on the order of their birth with respect to my daughter's birth. This is generally true through multiple divorces, different children in successive divorces are treated differently based on the order of their birth and the amount fathers pay for children of successive divorces is based on diminishing shares of his income; this

---

[4] "The US Supreme Court implied that "a (once) married father who is separated or divorced from a mother and is no longer living with his child" could not constitutionally be treated differently from a currently married father living with his child." Quilloin v. Walcott, 98 S Ct. 549, 434 US 246, 255-56, (1978)

clearly violates the Equal Protection clause since different children from the same parent are treated differently solely based on birth order.

40. "Facially discriminatory" statutes are clearly a violation of the Equal Protection Clause[5]. Massachusetts General Laws Chapter 273 are *de facto* blatantly gender biased[6]. This court should consider the gender biased laws, giving greater than 93% sole custody to females, excessive child support amounts, the political drive to maximize federal incentives, and the deprivation of rights the "Best Interest" doctrine is "Facially Discriminatory" and has resulted in the injury to a single class of individuals[7]. The facts should prove to the court that male litigants are not provided Equal Protection or Due Process in Massachusetts' courts. Instead there is a palpable gender bias in all proceedings.

41. The Commonwealth mandates multiple unconscionable contracts and violates multiple contractual obligations secured under "Obligations of Contracts" under Article I, Section 10, of the U.S. Constitution. For example: the right of a fit parent to contract with and for his child(ren), Child Support – a concept foreign to the Common Law – is a 'Special Obligation' that is void of any *quid pro quo* arrangement (under Common Law, only guilty parties can be forced into such obligations), the state version of the marriage contract now provides incentives to women to unilaterally break and receive tax-free income in excess of the amounts needed for the support of the child(ren).

---

[5] Yick Wo v. Hopkins, 118 U.S.356 (1886):
[6] Excerpt from MGL Chapter 273 to show gender bias based on pronoun use (emphasis added):

"(1) **he** abandons **his** spouse or minor child without making reasonable provisions for the support of **his** spouse or minor child or both of them; or

(2) **he** leaves the commonwealth and goes into another state without making reasonable provisions for the support of **his** spouse or minor child or both of them; or

(3) **he** enters the commonwealth from another state without making reasonable provisions for the support of **his** spouse or minor child, or both of them, domiciled in another state; or"

14

42. Furthermore, divorced fathers are also treated as second-class citizens with respect to starting "second families" because of the financial burden of current custody law places on them thereby depriving men of Constitutionally guaranteed rights – under the US Constitution as "pursuit of happiness" and "liberty interests" - whereas mothers are financially rewarded by the Commonwealth for successive, failed relationships which produce children. Gender based discrimination violates the Federal Equal Protection clause.

43. The vagueness of the "best interest" doctrine includes results in the abuse of children. For example, the abuse that Jonathan has suffered while under your Respondent's care has been the subject of a GAL investigation, monitoring by the Westford police department and by the pediatrician's office and a professional psychologist. While under some versions of Common Law a parent could be deprived of custody under continued abuse, the current system only makes custody changes, away from females, following substantial criminal behavior toward the child. To wit, the Westford police has warned your Respondent "someone is going to jail" if the pattern of abuse keeps up against Jonathan and by the infamous statement by the GAL (a lawyer) "at least there are no broken bones." Federal Equal Protection, Due Process, and slippery slope argument in the behavior of the laws with respect to the definition of fitness of a parent which is overtly intertwined with gender biases in the courts.

44. Another violation of Federally protected Due Process that routinely occurs in Family Courts is that male litigants are routinely required to pay for the female litigant's court costs. Contrary to Federal requirements: "District court's entry of order awarding attorney fees under Equal Access to Justice Act (EAJA) was not consistent with due process and, thus, relief was mandatory under rule providing for relief from void judgments;" Orner v. Shalala, 30 F.3d 1307

---

[7] "Legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial are bills of attainder

45. The political branches of the Commonwealth no longer provide the proper separation required under our Republican form of government. The courts have entered into conversion with the state legislature in the area of 'Family Law.' For example, a panel of state judges determines the child support formula, sits in judgement on the enforcement of the formula, and receives "kickback" on the Federal monies that are collected as a result of these practices. Interdepartmental agreement signed on July 13, 2001 for Justice Dortch-Okara Chief Justice for administration and management of the trial courts. This contract, lays out the procedures by which the Department of Revenue and the Massachusetts Probate and Family Court go about violating, predominately male litigants, civil and constitutional rights in exchange for Federal remunerations being redirected to the courts. This revenue agreement gives every appearance of being in violation of the 1986 Federal anti kickback act, 41 USC 53 and/or the R.I.C.O. Act. Also, the legislature no longer acts without direction of the judiciary in the area of Family Law. Even with the recent referendum on shared parenting in the state – the vote was 85% in favor of shared parenting – the legislature, specifically under 'counsel' from the judiciary, refuses to change the laws. Such an arrangement between divorcing parents would put at risk a significant portion of federal incentive monies. A key component to the state budget. This financial arrangement and state dependence on Federal remunerations calls into question the ability of the Family Courts to provide male litigants with a "fair and impartial hearing" as guaranteed under the US Constitution.

46. The Federalist Papers noted that each citizen is a free and sovereign individual who surrenders part of his sovereignty to the state in order provide better protections of his rights by the body politic. Under 'Family Law' fit parents, sovereign individuals, have surrendered their rights under family law and been subjected to – again, please note the slippery slope argument –

---

prohibited by the Constitution." United States v. Brown. 381 U.S. 303, 66 S.Ct. 1073 (1946)

to the point where non-custodial parents, mostly male litigants, are civilly murdered, have been deprived of may free will choices, threatened with various license suspensions, deprived of property, deprived of liberty, deprived of life (directly and indirectly), deprived of the right to bare arms, become financially disadvantaged, their freedom to travel or movement curtailed by the state (see MGL Chapter 273 above), are forced into unconscionable contracts, and threatened with prison; put simply, these fathers are treated as slaves, no longer as sovereign entities. This violates the basic compact between the 'free and sovereign citizen' and the state as outlined in the Federalist papers.    This violation goes to the very core of our Federal Constitutional Republic.

Federal question as regarding awards of child support and commissions of fraud therein:

The egregiously different burdens and benefits placed on persons similarly situated but for the award of custody, i.e., parents with the obligation to support their child and the same means for doing so as when they were married, has been explained at length in several judicial opinions. The finding is that such disparate treatment violates the guarantees of equal protection. *Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434 (1981), *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160, 119 S.Ct. 1180 (1999), and *Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620 (1996). Child support guidelines do not result in awards based on the constitutionally sound principles of equal duty and proportional obligation (proportional to available financial resources such as each parent's income). See *Smith v. Smith*, 626 P 2d 342, 345-348 (Oregon, 1980); *Meltzer v. Witsberger*, 480 A.2d 991 (Pa. 1984); and *Conway v. Dana*, 318 A.2d 324 (Pa. 1985).

Further, the instant state proceedings have consistently demonstrated themselves to be willfully, intentionally, and knowingly in violation of both state and federal law, by: ordering

17

awards of child support in favor of Respondent, and of garnishment against Defendant , that circumvented various statutory due process consideration factors as to needs, assets, debts, and resources of each parent, as well as violating due process procedures in the timeliness and payment logistics thereof; moreover, the actual amounts awarded, even *if* they had not been otherwise unlawful pursuant to the above, were consistently mandated and carried out in express violation of statutory maximum limits proscribed by Common Law and both state and federal law, even though this Defendant duly informed the instant state court of said limits *multiple* times, within various pleadings, and also on the record in open court. *See* Ind. Code § 24-4.5-5-104, and Ind. Code § 24-4.5-5-105, as well as 15 USC § 1673, and 15 USC § 1675.

Additionally, multiple commissions of fraudulent reporting of income and expenses have been committed in knowing, intentional, and willful concert by Respondent and her counsel, Conger; When these incidents have been presented to the instant state court, they were also ignored; The result is judicial-attorney conspiracy to commit child support fraud and further unlawful deprivations of property without due process, all in violation of the Constitution.


Federal question as regarding equal rights to care, custody, and control of minor children:

a) A parent's right to raise a child is a constitutionally protected liberty interest. This is well-established constitutional law. The U.S. Supreme Court long ago noted that a parent's right to "the companionship, care, custody, and management of his or her children" is an interest "far more precious" than any property right. *May v. Anderson*, 345 U.S. 528, 533, 97 L. Ed. 1221, 73 S.Ct. 840, 843 (1952). In *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 68 L. Ed. 2d 640, 120 S.Ct. 2153, 2159-60 (1981), the Court stressed that the parent-child relationship "is an important interest that 'undeniably warrants deference and absent a

18

powerful countervailing interest protection.'" quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed 2d 551, 92 S.Ct. 1208 (1972).

b) A state's granting of sole custody is sufficiently intrusive to warrant scrutiny, i.e., granting sole custody to one parent impinges on the rights of the other parent to a significant extent. This is obvious to the most casual observer. In *Troxel v. Granville*, 527 U.S. 1069 (1999), Justice O'Conner, speaking for the Court stated, "The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of the law.' We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, 'guarantees more than fair process.' The Clause includes a substantive component that 'provides heightened protection against governmental interference with certain fundamental rights and liberty interest" and "the liberty interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interest recognized by this Court." Logically, these forms of fundamental violations are inherently a federal question.

c) The compelling state interest in the best interest of the child can be achieved by less restrictive means than sole custody. A quarter-century of research has demonstrated that joint physical custody is as good or better than sole custody in assuring the best interest of the child. As the Supreme Court found in *Reno v. Flores*, 507 U.S. 292, 301 (1993): "'The best interest of the child,' a venerable phrase familiar from divorce proceedings, is a proper and feasible criterion for making the decision as to which of two parents will be accorded custody. But it is not traditionally the sole criterion -- much less the sole constitutional criterion -- for other, less narrowly channeled judgments involving children, where their interest conflicts in varying degrees with the interest of others. Even if it were shown, for example, that a

particular couple desirous of adopting a child would best provide for the child's welfare, the child would nonetheless not be removed from the custody of its parents so long as they were providing for the child adequately." Narrow tailoring is required when fundamental rights are involved. Thus, the state must show adverse impact upon the child before restricting a parent from the family dynamic or physical custody. It is apparent that the parent-child relationship of a married parent is protected by the equal protection and due process clauses of the Constitution. In 1978, the Supreme Court clearly indicated that only the relationships of those parents who from the time of conception of the child, never establish custody and who fail to support or visit their child(ren) are unprotected by the equal protection and due process clauses of the Constitution. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978). Clearly, divorced parents enjoy the same rights and obligations to their children as if still married. The state through its family law courts, can impair a parent-child relationship through issuance of a limited visitation order, however, it must make a determination that it has a compelling interest in doing so. Trial courts must, as a matter of constitutional law, fashion orders which will maximize the time children spend with each parent unless the court determines that there are compelling justifications for not maximizing time with each parent. Throughout this century, the Supreme Court also has held that the fundamental right to privacy protects citizens against unwarranted governmental intrusion into such intimate family matters as procreation, child-rearing, marriage, and contraceptive choice. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 926-927 (1992).

d) Contrary to the state court's consistent disregard for the equal right of this (male) Defendant to care, custody, control, and management of his natural minor children, and its corresponding continuum of sole custody in favor of the (female) Respondent, the federal Due

20

Process and Equal Protection rights extend to both parents equally. In *Caban v. Mohammed*, 441 U.S. 380, (1979) the Supreme Court found that a biological father who had for two years, but no longer, lived with his children and their mother was denied equal protection of the law under a New York statute which permitted the mother, but not the father, to veto an adoption. In *Lehr v. Robinson*, 463 U.S. 248 (1983), the Supreme Court held that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' *Caban*, [citations omitted], his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (Id. at 261-262). To further underscore the need for courts to consider the constitutional protections which attach in family law matters, one need only look to recent civil rights decisions. In *Smith v. City of Fontana*, 818 f. 2d 1411 (9th Cir. 1987), the court of appeals held that in a civil rights action under 42 U.S.C. section 1983 where police had killed a detainee, the children had a cognizable liberty interest under the due process clause. The analysis of the court included a finding that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." Id. at 1418, citing *Kelson v. City of Springfield*, 767 F. 2d 651 (9th Cir. 1985). In *Smith* the court stated "We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." Id. In essence, the Supreme Court has held that a fit parent may not be denied equal legal and physical custody of a minor child without a finding by clear and convincing evidence of parental unfitness and substantial harm to the child, when it ruled in *Santosky v. Kramer*, 455 U.S. 745, 753 (1982), that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the Fourteenth Amendment."

21

47. In the instant state proceedings, Defendant has been continually deprived of the full right to equal care, custody, control, and management of the minor children, and the same approaching seven years and one month going, without any requisite showing of past or potential harm – of *any* kind – upon the minor child(ren), while, instead and contrarily, Respondent has been consistently documented in acts of minor to medium abuse towards the children, long-ranging neglect of several important matters regarding the children, numerous criminal acts of a dishonest nature, serious domestic violence attacks against this Defendant – even *in the presence of* the children – and, a general haphazard disdain for the minor children's welfare, needs, and emotional stability… yet, the state court essentially coddles her behavior *against* the best interests of the children, and *even* has gone to certain extraordinary lengths to shelter and assist some of these egregious manifestations.

48. This petition for removal is strictly *not* about a typical domestic relations action versus what would be the expected reluctance of a federal court to exercise jurisdiction over the same; this cause inures to the very *essence* of the enactment and purpose of 28 USC §§ 1441 and 1443: to provide for a federal remedy when a person "is denied or cannot enforce in the courts of such State a right under any law providing for the equal rights of citizens of the United States, or of all persons within the jurisdiction thereof"

## NOTICE OF RELATED CASES

49. Defendant also wishes respectfully to demand mandatory judicial notice, pursuant to Rule 201(d) of the Federal Rules of Evidence, and pursuant to the Full Faith and Credit Clause, of the following related cases supporting and documenting some of the above allegations, to wit:

a) "The Court has held that the deprivation of fundamental liberty rights 'for even minimal periods of time', unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 96 S.Ct. 2673; 427 U.S. 347, (1976).

b) "The statist notion that government may supercede parental authority in order to ensure bureaucratically or judicially determined "best interests" of children has been rejected as repugnant to American traditions. Judges and state officials are ill-equipped to second guess parents and are precluded from intervening in absence of powerful countervailing interests." *Zummo v. Zummo*, 574 A.2d 1130, 1138 (Pa. Super. 1990), citing *Lehr v. Robertson*, 463 U.S. 248, 257-61, 103 S.Ct. 2985, 2991-93, 77 L.Ed. 2d 614, 623-29 (1982).

c) "Wife was not entitled to vested interest in husband's education or professional productivity, either past or future; such an award would transmute the bonds of marriage into the bonds of involuntary servitude." <u>Severs v Severs</u>, (1983) 426 So.2d 992

d) "By the civil law, the child of parents divorced is to be brought up by the innocent party, at the expense of the guilty party.", Bouvier's Law Dictionary, 1876 ed.

e) "Hence, any act of the legislature which violates any of these asserted rights of which entrenches on any of these great principles of Civil Liberty, or inherent rights of man, shall be void.", <u>In re Dorsey</u>, 7 Porter (Ala.) 293, 377-378 (1883)

f) "The State cannot diminish the rights of the people.", <u>Hurado v. California</u>, 110 U.S. 516.

g) "If the legislature clearly misrepresents a constitutional provision, the frequent repetition of the wrong will not create a right.", <u>Amos v Mosley</u>, 74 Fla. 555; 77 S0. 619

h) "To be that statues which would deprive a citizen of the rights of person or property without a regular trial, *according to the course and usage of common law*, would not be the law of the land.", Hoke v. Henderson, 15, N.C. 15, 25 AN Dec 677.

i) "A court faced with a motion to dismiss a pro se complaint must read the complaint's allegations expansively, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972), and take them as true for purposes of deciding whether they state a claim." Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972).

j) "The doctrine [of unclean hands] promotes justice by making a [respondent] answer for his own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits of his transgression." [Respondent's] must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Superior Court* (E. & J. Gallo Winery) (1999) 76 Cal.App.4th 970.

k) Massachusetts Constitution, Article XV. In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it. [See Amendments, Art. XLVIII, The Initiative, II, sec. 2].

l) "It is, that the law is always approaching, and never reaching, consistency.", The Common Law, Oliver Wendell Holmes, Jr., Dover Publications, Inc., NY, 1991, Page 36.

50. There is a sufficient pattern of judicial abuse to substantiate that Judge Edward Donnelly's jurisdiction over the instant state action was most likely *void ab initio*, and even if not, that any attempt at continuing exercise over the state proceedings *is* void.

24

51. Defendant has a federal question right, under the guarantees of 42 USC § 2000a, to full and equal lawful treatment in a state court of law, and according to the various protections under not only the Massachusetts Constitution, but more importantly under those of the U.S. Constitution.

52. Defendant has a federal question right, under the protections of the Civil Rights Act of 1964, 42 USC § 2000d, et seq., and as interpreted by the U.S. Supreme Court to *include* prohibitions against discrimination based on sex or gender, to now remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

53. Defendant has a federal question right, under the protections of 42 USC §§ 3617 and 3631, which include prohibitions against discrimination based on sex or gender, to remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC § 2000d-7.

54. Defendant has a further federal question right, under the protections of 42 USC § 5891, which include prohibitions against discrimination based on sex or gender regarding other matters and allegations expressed *supra*, to remove the instant state proceedings, under 28 USC §§ 1441 and 1443, in order to be free from the denial of such equal civil rights and treatment established by the above allegations. *See also* 42 USC §§ 5106a, 5106c, 10406, 10420, 10701, and etc.

55. Defendant has a further federal question right not to be discriminated as articulated according to the above allegations, under the expressed public policy of the United States of America, by and through certain Acts of Congress strictly specifying the critical value of

protecting children, youth, and family bonds, and the joint responsibilities of federal courts therein. *See* 42 USC §§ 12301, 12351, 12352, 12371, 12635, and etc.

56. Defendant has a further federal question right to ensure that his minor children are free from experiencing abuse and/or neglect, due to unlawful sex or gender discrimination in awards of child custody, and to ensure that any involved state judicial systems meet or exceed their required corresponding duties under 42 USC §§ 13001, 13003, 13021, 13031, and etc.

57. Defendant has a further federal question right, under 42 USC §14141, to be free from unlawful violations of civil rights committed by the parties involved in the state proceedings.

58. The above numerous and various rights will, in fact, be consistently violated if these proceedings were ever to be remanded back to said state court, and manifest injury would accrue upon not only this Defendant , but also against the obvious best interests of the minor child.

## NOTICE TO PARTIES

59. Defendant now and hereby provide his formal Notice of the above to all interested parties, of record or otherwise, within and surrounding the above-encaptioned state court proceedings.

## SUMMARY AND PRAYER

60. Defendant reiterates that his request for removal to this Court is not just about a supported and reasonable *expectation* of the future manifest deprivation of his various civil rights within said state court, but also that such a deliberately unlawful pattern of the same is well established.

61. Without the immediate intervention, and the exercise of full jurisdiction and authority by this Honorable Court in removing said lower state proceedings, the Defendant will be otherwise subjected to egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifest and irreparable injuries therein, without reasonable remedy.

26

WHEREFORE, the undersigned Defendant, Mark Cimini, now pray for removal of the above-encaptioned state court proceedings into, and under, the jurisdiction of this United States District Court, with all speed, and for all other relief deemed just and proper in the premises.

Respectfully submitted,

*Mark Cimini*

Mark Cimini

### VERIFICATION

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed at Westford, MA, this ___ day of January, 2004.

*Mark Cimini*

Mark Cimini

### CERTIFICATE OF SERVICE

I hereby certify that, on this ___ day of January, 2004, a true and complete copy of the foregoing petition for removal, by depositing the same in the United States mail, postage prepaid, has been duly served upon all parties of record in the lower state proceedings, to-wit:

Margaret Cimini
5 Sand Beach Road
Westford, MA 01886

and, that the same is being also filed this same date within the lower state trial court proceedings.

Mark Cimini

Mark Cimini
12 Maple Road
Westford, MA 01886
(978) 692-4556
m.cimini@att.net