ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Cause No: 05 – 10125 WGY

| | |
|---|---|
| Margaret Cimini, | **Motion for Reconsideration** |
| Plaintiff (Respondent below) | **Request for Hearing** |
| v. | State court cause no.: 97D-4115-DV1 |
| Mark Cimini | |
| Defendant (Petitioner below), | |
| and, in re: the support and welfare of Jonathan Cimini. | Honorable Judge |

## Motion for Reconsideration

### Forward

1. The court claims the Defendant was attempting to "circumvent the dismissal in the prior Federal action. The Court will not permit Cimini's attempt to raise these matters in this fashion, by artful pleading." This was never my intent. And, no attempt is made here to try to get this court to enforce the Habeas Corpus on the state.

2. The previous pleadings, I intended and believe, was in the nature of a Mandamus (entitled "Complaint In The Nature Of A Petition For A Writ Of Mandamus And To Invoke The General Superintendence Of The Court") was aimed at asking the Federal courts to force the state courts to provide Due Process in the state case involving a Habeas Corpus. Rather than remand this case back to state court, this Court should have directed the petitioner how to make these *pro se* pleadings acceptable.

3. I also believe on of the main reasons for the court rejecting the original plea was that I had filed In Forma Pauperis. That having been denied, as I remember, provided the court a reason for denying the petition. This time I paid the fee, not filing In Forma Pauperis.

4. I do not recall the Federal Court addressing the property issue in its denial.

5. Since the state never completely answered the pleadings nor provided me with a hearing (and the Federal Mandamus was rejected) I decided to remove the entire case to the Federal Courts **asking this court to address the – clearly - Federal issue of unlawful taking of property by the state, resolve several Common Law and Constitutional issues that went unopposed and unanswered in state court, and to address Process and Due Process deprivations encountered in state court.** The lack of any hearing and no response by Plaintiff to any motions - yet incomplete denials to the questions posed in over ten months in state court should provide this court with some indication of my frustration and the lack of Process and Due Process. Specifically I charge that when I was out of work I was denied access to a court docket since that would have lowered the state's Federal reimbursement amounts.

6. The state does not have the powers to remove a constitutional right by changing from the phrase "title to the custody" to "custody", see *Bigelow v. Virginia*, 95 S.Ct. 2222, 421 U.S. 809 (1975) ("A state cannot foreclose the exercise of constitutional rights by mere labels.")

7. There is no compelling state interest and the legislative enactment resulting noting this loss of property right, to the best of my knowledge, in the historical record and since we are talking about liberty interests, were the changes in "title to custody" determination narrowly drawn to express only legitimate state interests at stake, see *Roe v. Wade* , 93 S.Ct. 705, 410 U.S. 113 (1973). Again, no record exists.

8. Judge Donnelly's denial of the Habeas Corpus centered on cases that were decided without considering the issue of property. Furthermore, the cases Judge Donnelly used never directly addressed any Common Law issues. Instead, Judge Donnelly cited cases that were decided contrary to Common Law but no Common Law issues were apparently raised in the case

since no mention of overruling Common Law was mentioned; and; he noted that ".... the respective rights of the parents have been altered by both statutory and case law.", but again did not address whether these changes properly addressed the Common Law rights and the issue of Common Law Property rights was not addressed at all.

9. On subsequent state appeal of the Habeas Corpus, no reason was given, the appeal was just denied; again, no reason given. Another violation of Due Process.

10. Also under lack of Process and Due Process, the state court and Plaintiff have failed to answer the **Bill of Particulars**. This document asks, as I understand it, 1) what lawful jurisdiction the court operates under, e.g., Admiralty, Common, Equity, Roman, or Martial, 2) if the judge is properly sitting, e.g., signed a pledge of support for the Constitution and is properly bonded, 3) what status the participants have during the proceedings, e.g., citizens or subjects, 4) who are the accusers, e.g., who are the real and true parties of interest, and 5) what are the nature and cause of the accusations against me, e.g., what contract have I broken and who seeks remedy. Once a court's jurisdiction is challenged it must be answered to fulfil Due Process requirements.

11. In these proceedings I am asking this court with Constitutional and Common Law jurisdiction: 1) Original Questions of Law, 2) Questions of Settled Law, and 3) am asking for Remedy since I have been denied answers to these and similar questions in state court. A lack of Process and Due Process.

12. Common law is the fundamental basis of the English system of *civil rights*. As discussed in previous briefs, the Common Law Civil Rights are protected under the Federal Constitution. Again an issue giving this court jurisdiction given that Judge Donnelly argues that the Common

Law does not belong in Family Law. This court should recognize that Common Law was all that was available to define Family law at the signing of the Constitution.

13. The Common Law property protections under the Fifth Amendment is clearly a Federal issue, is settled law, and *is billable*. There is no way for a property right to 'vanish' in a Constitution Republic. No case presented or law mentioned has found the Common Law property issue Unconstitutional or invalid in any way; therefore the settled issue of property rights is valid today.

14. The §1983 claim was in part due to my repeated attempts to get DOR to provide me with a jury trial over the disputed amount and never getting any response other than continued collection actions. Also, **the lack of any court date back in April 2004** to my motion to address the Child Support and Custody Issues does show a lack of Process and Due Process. Had my April 2004 motion been allowed on the docket I would not have had these issues with DOR.

15. This court makes a comment about my use of 18th and 19th century citations but I would remind the court that the US Constitution and State Constitution are both 18th century documents and *Marbury v. Madison*, is settled law that provides courts with the authority, jurisdiction, and direction to operate is 19th century law. Any claim or even hint that 18th and 19th century laws are invalid invalidates the notion that we are a nation of one set of laws, the notion of settled law, and the issue of precedence. If the state is allowed to simply invent new law devoid of any foundational basis and ignores precedence (settled law) then no rights and privileges are immune from tyrannical efforts. Furthermore the issue of children having the protection of property, there are 18th through **20th** century cites backing my claim.

16. I've also asked the Federal Court to review issues since the Commonwealth derives Federal monies as a result of their practices. This review as a result of Federal monies is squarely within Federal Court Jurisdiction. All prior cites of comity and jurisdiction, to the best of my knowledge, do not address the issue of Federal incentive monies and the right of the Federal Judiciary to inquire as to the proper procedures being used to qualify for these monies. I have claimed in these papers that these Federal incentive monies color the state proceedings and provide a question of impartial proceedings. This court does have jurisdiction to investigate these claims.

17. In those areas where Defendant's allegations did not request Court to issue, modify, or vacate a divorce, alimony, or child custody decree, but instead presented a constitutional claim in which it was incidental that the underlying action involved a divorce, this suit is not subject to the domestic relations exception and those areas addressed.

18. The Defendant wishes to challenging the method that the state used in coming to the custody decision on Constitutional grounds not the decision itself.

19. It should be noted by this court that adoption law is 'adopted' from Roman Law; however, the rights accorded adoptive parents are not Roman family laws. Once a child is adopted, the parents have Common Law rights to their adoptive parents, not Roman law rights, see, *Woodward v. The Meriden Trust*, 81 Conn. 152; 70 A. 453; 1908 Conn. I propose that this same logic of adopting foreign ideologies should constrain Family Law.

20. These Constitutional issues were not addressed by this court in its recent "Memorandum and order for Remand". Specifically the Defendant has claimed at least that:

1.  A property right has been eliminated by the state against the concise rule of law in this Constitutional Republic,
2.  The Commonwealth routinely creates different classes of citizens as a result of marital status,

3. Cruel and unusual punishment are imposed by the Commonwealth lacking any wrongdoing,
4. Violations of Process and Due Process claims have been made,
5. Breach of Contract,
6. Gender based discrimination,
7. Non-Custodial rights in-light of Recent *Newdow v. Newdow* Supreme Court ruling,
8. Guarantees of a Republican form of government,
9. Fraud,
10. Peonage and slavery,
11. That Federal incentives color all state proceedings, and
12. No response to the pleading in this or state courts, leaving the courts to act as an advocate for the plaintiff against the "Best Interest" of the minor child.

21. A basic question is, :what wrong did I do, what contract did I break, what law have I violated to now have the state interfere with my life? Natural law does not punish the innocent.

22. The Declaration of Independence cites immutable laws granted by the "Creator" contrasted to British laws which were whatever the King said they were. This concept of God given rights is reflected in the Constitutional phrase unalienable rights in the Constitution. Rights do not diminish and do not come from the government in this Constitutional Republic.

23. This court provided a broad brush dismissal of the Defendant's pleading and did not provide the necessary level of review of a pro se litigants pleading nor did the court properly perceived the intent and issues raised. This pleading will hopefully address these issues and correct the impression of circumventing process. And as a pro se litigant, if these pleading are deemed deficient, this court has an obligation to provide the Defendant the right to alter the pleadings.

24. Remanding the case back to state court without provisions of providing Constitutional, Common Law, organic, foundational reasoning behind the deprivation of property would be improper given the current lack of Due Process exhibited so far in state court.

## Incorporation of Prior Pleadings

25. Defendant hereby incorporates by reference all pleadings, papers, and effects heretofore filed or otherwise lodged within the state proceedings the same as if fully set forth herein.

## Jurisdiction

26. Beyond the Jurisdiction issues already cited, The acceptance of Federal funds by the state (and specifically funneled to the court) allows the court jurisdiction into these matters due to the Federal Spending Powers Act. This distinction in the Domestic Relations Exception clauses cited in the recent Order for Remand do not seem to address the issue of Federal Monies and the subsequent right of the Federal government, because of the investment of Federal fund, oversight into areas receiving federal monies.

27. The issues that have been raised are Constitutionally protected therefore Federal courts do have direct jurisdiction.

28. In *Thomas v. New York City*, 814 F.Supp. 1139 (E.D.N.Y.), "whether the state's procedure used to separate parent from child complie[d] with constitutional due-process requirements [was] squarely within court's federal question jurisdiction." The determination of the issue did "not entail any investigation into the fitness of the parent to care for child, or into the decree.".

29. In *Friedlander v. Friedlander*, 149 F.3d 739, 740 (C.A.7 (Ill.) 1998), the exception did not bar diversity jurisdiction where the case merely arose out a domestic relations dispute and did not seek any of the distinctive forms of relief typically associated with domestic relations jurisdiction.

30. In *Rubin v. Smith*, 817 F.Supp. 987, 991 (D.N.H. 1993), the exception did not apply where constitutional questions were raised and damages were sought for "deprivation of their constitutional interests without due process of law. There a mother and child alleged that their

constitutional rights were violated when police seized the child pursuant to a foreign child custody decree without notice and hearing. Adjudication of the child's custody was not sought; the §1983 only arose out of the custody dispute.

31.     In *Catz v. Chalker*, 142 F.3d 279 (C.A.6 (Ohio) 1998), a former husband's action, seeking a declaration that the divorce decree was void as a violation of due process, was not a core domestic relations case to which the domestic relations exception applied. The action did not seek declaration of marital or parental status, but instead presented a constitutional claim in which it was incidental that the underlying action involved a divorce

32.     In *Johnson v. Rodrigues* (Orozco), 226 F.3d 1103, 1109 (C.A.10 (Utah) 2000), the Rooker-Feldman doctrine did not apply. There the father was not a party to the adoption proceeding and his underlying claims challenged the constitutionality of the Utah adoption statutory scheme and alleged a due process violation. Such claims were asserted under federal question jurisdiction, and constitutional claims do not require a federal court to make a custody determination.

33. Given the unlawful takings of property issue raised:

"The diversity statute is not ambiguous at all. It extends the jurisdiction of the district courts to "all civil actions" between diverse parties involving the requisite amount in controversy. 28 U.S.C. sec. 1332." Ankenbrandt v. Richards, 504 U.S. 689, 707 (U.S.La. 1992)

And later

Where "petitioner's claims [ ] involve a federal question or statute -- the presence of which would strongly counsel against abstention -- petitioner's state-law tort claims for money damages are easily cognizable in a federal court. All these considerations favor the exercise of federal jurisdiction over petitioner's claims.", Ankenbrandt

34. "[T]he equitable abstention doctrine does not deprive the federal court of jurisdiction; rather, it is a judicially imposed self-restraint based on principles of equity, comity, and federalism." *Brindley v. McCullen*, 61 F.3d 507, 507 (6th Cir. 1995) (remanded to stay proceedings), citing *Younger v. Harris*, 401 U.S. at 43-44. "Comity is not a rule of law, but one

of practice, convenience, and expediency." *Mast, Foos & Co. v. Stover Manufacturing Co.*, 177
U.S. 458, 488 (1900). "Comity persuades; but does not command."

35. It is the duty of the courts to be watchful for Constitutional rights of the citizen, against
any stealthy encroachments thereon.", *Boyd v. U.S.*, 116 US 616, 635, (1885).

36. "Federal judges can set aside or overturn state courts to preserve constitutional rights.",
Mitchum v. Foster, 407 US 225 (1972).

37. Federal district court also has subject-matter jurisdiction over claims seeking relief from
family-court orders which emanated under procedures that allegedly violated due process, equal
protection, and other federal statutes such as the sec. 1983 civil rights statute. *Agg v. Flanagan*,
855 F.2d 336, 339 (C.A.6 (Ohio) 1988). Where *Agg* had been brought under sec. 1983 and
alleged deprivation of federal constitutional rights and state procedures that were contrary to
federal law and thus invalid under the supremacy clause, the domestic relations exception
doctrine, which concerned federal jurisdiction based on diversity, did not apply. "[J]urisdiction
… was therefore proper under 28 U.S.C. sec. 1331 or sec. 1343." Id. U.S. Const. Art. 6, cl. 2;
Amends. 5, 14.

## Family Law History

38. "Title to the Custody' of children, as property, was determined under strict rules of
Common Law AT LAW upon the signing of both the state and Federal Constitutions. The "title
to the custody" was not adjudicated under rules of Equity; they were not seen as complex or
intricate issues. All property issues are protected by the Federal Constitution; had the strict rules
of title succession not been adjudicated under strict Common Law rules for the succession of title
then a trial by jury would have been allowed.

39. The introduction of the Unconstitutional "Tender Years" doctrine in the mid-19th century by the judiciary was not based on any legislative laws. Instead the judiciary simply began to adopt legal actions that were in vogue in Europe and Britain.

40. Even with the adoption of the "Tender Years" doctrine, the Common Law right that no innocent party should suffer remained, see *Reynolds v. Sweeter*, 81 Mass. 78 as already cited.

41. The adoption of the current Family Law comes from the Stalinist Soviet system, including the base child support percentage. A slightly reformed version of the Stalinist system still exists as Article 81 of the current Russian Family Code. The original system Soviet style system was promoted in the United States as part the national child support and welfare reform policy known as "The Wisconsin Model" adopted from a Leninist authoritarian regime.

42. The first instance of "No-Fault Divorce" was in Bolshevik, Leninist Russia circa 1918. No-Fault divorce was designed to *1) destroy the family, 2) increase control of the government over the citizens, and to 3) "empower women".* Advocates of the Wisconsin Model always ignore these first two important motives.

43. It has been said that religion[1] of Marxism/Socialism/Leninism were the "black plague" of the 20th century. In an attempt to bring about the collective betterment of man, between 100 and 200 million during the 20th century had to be sacrificed in a religious fervor unparalleled in human history. In an attempt to impose this religious framework, Marxist philosophy has always required gulags, the use of absolute state power, re-education camps, secret police, and fear. Family Court, in implementing the socialist model, is still spreading this black plague. The goal of the Leninism/Socialism/Marxism/Totalitarian religion is to destroy the family and is contrary to the concise rule of law in this country; this religion also decries self-organization and self-

---

[1] "A cause, principle, or activity pursued with zeal or conscientious devotion.",
http://dictionary.reference.com/search?q=religion

determination, cornerstones of our Constitution. Women were "freed" so they could work in factories towards the industrialization and benefit of the Soviet Empire. Children are 'owned' by the state under the Soviet model. Owned because the state's free will controls the children from birth.

44. In this Constitutional Republic, government imposing religion (in this case socialist ideology) over individual rights is not only Unconstitutional but is Tyranny.

45. The judiciary nor the state had any right to adopt either of these two foreign set of laws over our own organic and foundational laws.

46. It should be noted that although the judiciary and state have intruded on the rights of the title of children for married men, the right to the title of the children of single women has been left relatively untouched. The historical perspective clearly demonstrates a gender biased changing of the laws.

## Property Rights

47. *The state has eliminated a property right.* A right cited in multiple court cases as more precious than the right of property. Furthermore, the Commonwealth has transferred a property issue at law to a court of equity without the right to a trial. But there is no record of how or why this property right was taken by the state.

48. This right of property is well documented in both 18th through 20th century citations, Law books, and general history books. But there is no authority that provides how this property right was dissolved.

49. The Common Law Civil Rights protected parents and their children from unwarranted state intrusion by protecting children with the rights of property; a right declared sacred by the founding fathers. Furthermore many of the citations state that the right to children is more precious or important than the right to property and should garner greater protection.

50. Parents enjoyed all the rights of property with respect to their children at the signing of both state and federal Constitutions; Common Law property. Property rights include the right to a trial by jury, compensation for government takings, and were sacred rights (see the various writings of Thomas Paine and Thomas Jefferson). Numerous citations in the original pleading show that this property right existed.

51. Under Common Law, had these strict rules of succession to the title of children not been in place then disputes with regard to title to the custody of children, with all the protections of property and more, would have required a trial by jury. Divorces, up until the introduction by the judiciary of the Unconstitutional "Tender Years" doctrine, followed the strict rules of Common Law, see *Commonwealth v. Briggs*, 33 Mass. 203, 1834, decision were clearly made AT LAW.

52. Courts of Equity historically were reserved for EXTRAORDINARY CASES requiring remedy that was not available in Common Law Courts, where strict rules were followed; as in the case of succession of the right to a title.

53. The introduction of the Unconstitutional "Tender Years" doctrine by the judiciary determined whom had superior claim to the title of the children based on the age of the children. Again no judicial or state "Best Interest" determination, just strict rules AT LAW.

54. Massachusetts divorces were handled in courts of joint Common Law and Equity Jurisdiction but the 'title to the custody' issue was determined without any allowance for judicial discretion. The Common Law "Best Interest" formula followed a very strict succession of title allowing transitions down this line of succession only if the child needed rescuing from a person in the line of succession who should have "title to the custody."

55. A Common Law dispute over title to Common Law property which was the result of a Common Law Contract would require a trial by jury had there not been a strict rules for the succession of title.

56. Divorces in the twentieth century were heard both in Superior Court and Probate and Family (P&F) Courts. The "Rules" as we know them now came into being circa 1974. Circa 1986 divorces were only heard in P&F courts.

57. Action under law should be held under law and not transfer to courts of equity. For instance, the Judiciary Act of 1789, An Act to establish the Judicial Courts of the United States , Sec. 16. "And be it further enacted, That suits in equity shall not be sustained in either of the courts of the United States, in any case *where plain, adequate and complete remedy may be had at law*."

58. Common Law provided a complete remedy AT LAW for custody disputes, i.e., a very strict line of succession for the "title to the custody" of Common Law property.

59. The issues here fall squarely within language of state constitutional right to jury trial, in light of nature of suit as being between two persons and clearly setting forth controversy concerning Common Law property. M.G.L.A. Const. Pt. 1, Art. 15:

"In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it."

60. A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government. My claims that the additional "free money" via Federal Incentive grants color the state proceedings, results in the oppression of predominately one gender but in either all too often forces one fit parent out of a child's live without the need for state rescuing; whereas a jury trial removes any perceived bias.

61. Juries act as a check on official power. In *Victoria Dalis v. Buyer Advertising, Inc.* we

find:

"The jury system, as the "sacred" method for resolving factual disputes, is the most important means by which laypersons can participate in and understand the legal system. *Commonwealth v. Canon*, 373 Mass. 494, 516, 368 N.E.2d 1181 (1977), cert. denied, 435 U.S. 933, 98 S.Ct. 1510, 55 L.Ed.2d 531 (1978). It brings the "rules of law to the touchstone of contemporary common sense." Id., quoting 1 W. Holdsworth, A History of English Law 348-349 (3d ed. 1922). "Jurors bring to a case their common sense and community values; their 'very inexperience is an asset because it secures a fresh perception of each trial, avoiding the stereotypes said to infect the judicial eye.' " *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 355, 99 S.Ct. 645, 664, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting), quoting H. Kalven & H. Zeisel, The American Jury 8 (1966)."

62. Given the recent referendum regarding child custody found eighty-five (85) percent of the

citizens of Massachusetts agreed with the concept of joint custody following divorces whereas

the judiciary determines sole custody over ninety percent of the cases, rulings certainly do not

fall under the "contemporary common sense" of the people.

63. Courts must not only place the Constitution higher than the laws passed by the legislature,

they must also place the intentions of the people ahead of the intentions of their representatives.

Meaning that the recent referendum on joint child custody has significant weight in court even if

the legislature does not act:

"There is no position which depends on clearer principles, than that every act of a delegated authority, contrary to the tenor of the commission under which it is exercised, is void. No legislative act, therefore, contrary to the Constitution, can be valid. To deny this, would be to affirm, that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that men acting by virtue of powers, may do not only what their powers do not authorize, but what they forbid.", Federalist Papers #78

64. Judicial Independence is tied to the rights of individuals and a guard against "dangerous

innovations", i.e., no-fault divorce and judicial discretion for child "title to the custody"

decisions:

"This independence of the judges is equally requisite to guard the Constitution and the rights of individuals from the effects of those ill humors, which the arts of designing men, or the influence of particular conjunctures, sometimes disseminate among the people themselves, and which, though they speedily give place to better information, and more deliberate reflection, have a tendency, in the meantime, to occasion dangerous innovations in the government, and serious oppressions of the minor party in the community. ", Federalist Papers #78

65. The standards of *stare decisis* in family law came to an abrupt and absolute end in 1974. The state has invalidated all family law precedents prior to circa 1974 by adopting current custody laws contrary to:

"To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them; ", Federalist Papers #78

## Fraud

66. I have stated in state filings that the relationship between plaintiff and myself was induced by fraud. This fraud was driven by the state gender biased custody determination. This fraud resulted in a contract, i.e., marriage. Both of these issues fall under the right to a trial by jury.

67. Women "getting pregnant" to "cement" a relationship is still morally repugnant to the majority of the population despite the re-education attempts of the state.

68. Taking property under color of law, color of authority, without providing compensation is not only treason (i.e., making war against the Constitution) but is fraud perpetrated by the state for its enrichment.

## Newdow

69. In the recent Supreme Court Case, *Newdow v. Newdow*, the Supreme Court stated that the non-custodial parent no longer has any claim on the minor children. Therefore, non-custodial parent have been deprived of all rights, including property rights contrary to:

Supreme Court of the United States held that parental termination proceedings "are among the most severe forms of state action." M.L.B. v. S.L.J., U.S., 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

## Gender Based Discrimination

70. Gender based discrimination and fraud have connections to common-law tort and rights to jury trials. The Federal equal rights statute, 42 U.S.C. § 1981 (Equal rights under the law), also has been interpreted to confer a right to a jury trial. See *Laskaris v. Thornburgh*, 733 F.2d 260, 263 (3d Cir.), cert. denied, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984) ("A party

seeking compensatory and punitive damages or other legal relief under 42 U.S.C.§ 1981 has a right to a jury trial").

71. Even statutes in the Commonwealth have been written in gender biased ways, see original pleadings.

72. Most objections for joint custody from women's and other groups all but classify all men as abusers and unfit to parent. This perception is unfounded. In the state court proceedings is a set of statistics that not only show that children raised by mothers run greater risks of societal problems but that children raised my men do not suffer the same problems. It should be noted that every credible study has shown that children raised in a home with both parents is the best situation; a stable biological family is in the "Best Interest" of children, bar none.

## Punishment
73. Both the Common Law and US Constitution prohibit the state from unwarranted punishment. 'Child Support', per the Wisconsin Model, requires an arbitrary decision to punish one parent during divorce by imposing a non-*quid pro quo* obligation; this arbitrarily imposed obligation subsequently impacts that parents ability to secure the blessings of liberty and happiness and subject *him* to arrest, fines, loss of licenses, and other criminal and civil penalties. The Common Law only allowed the punishment of the guilty party.

74. The right of the innocent under Common Law never allows for the right of the state to impose ideologies. Individual rights 'trump' any attempted imposition of religious ideology.

## Republican Government
75. In the Federalist papers number 51, James Madison notes that the limitations in the Constitution are designed to limit the power of those in government:

If men were angels, no government would be necessary. If angels were to govern men, neither external nor internal controls on government would be necessary. In framing a government which is to be administered by men over men, the great difficulty lies in this: You must first enable the government to control the governed; and in the next place, oblige it to control itself.

76. In Federalist Papers number 45 the argument that we are sovereign citizens not subjects:

"We have heard of the impious doctrine in the Old World, that the people were made for kings, not kings for the people. Is the same doctrine to be revived in the New, in another shape that the solid happiness of the people is to be sacrificed to the views of political institutions of a different form?"

And,

"It is too early for politicians to presume on our forgetting that the public good, the real welfare of the great body of the people, is the supreme object to be pursued; and that no form of government whatever has any other value than as it may be fitted for the attainment of this object. Were the plan of the convention adverse to the public happiness, my voice would be, Reject the plan. *Were the Union itself inconsistent with the public happiness, it would be, Abolish the Union. In like manner, as far as the sovereignty of the States cannot be reconciled to the happiness of the people, the voice of every good citizen must be, Let the former be sacrificed to the latter*. [emphasis added] How far the sacrifice is necessary, has been shown. How far the unsacrificed residue will be endangered, is the question before us. Several important considerations have been touched in the course of these papers, which discountenance the supposition that the operation of the federal government will by degrees prove fatal to the State governments. The more I revolve the subject, the more fully I am persuaded that the balance is much more likely to be disturbed by the preponderancy of the last than of the first scale."

77. The Judiciary receiving Federal Funds as a result of their decision seems to violate the

concerns in the Federalist Papers number 78. Specifically:

" The Executive not only dispenses the honors, but holds the sword of the community. The legislature not only commands the purse, but prescribes the rules by which the duties and rights of every citizen are to be regulated. **The judiciary, on the contrary, has no influence over either the sword or the purse;** [emphasis added] no direction either of the strength or of the wealth of the society; and can take no active resolution whatever."

78. Courts must not only place the Constitution higher than the laws passed by the legislature,

they must also place the intentions of the people ahead of the intentions of their representatives.

Meaning that the recent referendum on joint child custody in Massachusetts has significant

weight in court even if the legislature does not act.

"There is no position which depends on clearer principles, than that every act of a delegated authority, contrary to the tenor of the commission under which it is exercised, is void. No legislative act, therefore, contrary to the Constitution, can be valid. To deny this, would be to affirm, that the deputy is greater than his principal; that the servant is above his master; that the representatives of the people are superior to the people themselves; that men acting by virtue of powers, may do not only what their powers do not authorize, but what they forbid."

79. Judicial Independence is tied to the rights of individuals and a guard against "dangerous

innovations", i.e., no-fault divorce and judicial discretion for child "title to the custody"

decisions.

"This independence of the judges is equally requisite to guard the Constitution and the rights of individuals from the effects of those ill humors, which the arts of designing men, or the influence of particular conjunctures, sometimes disseminate among the people themselves, and which, though they speedily give place to better information, and more deliberate reflection, have a tendency, in the meantime, to occasion dangerous innovations in the government, and serious oppressions of the minor party in the community. "

80. The Commonwealth has violated a basic tenant of the Judiciary in that all rules and

precedence prior to about 1974 with regard to Family Law was invalidated by the currently

adopted custody laws.

" To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them;"

81. If we take the following excerpt from the Federalist Papers number 80 at face value, it

implies that since federal funds are being provided to the states based on certain divorce

statistics, that the state can no longer judge divorce cases; furthermore since the judiciary sets the

child support guidelines, sits in judgement over the guidelines, and benefits from the collection

of these funds, a trial by jury or by the Federal Judiciary provides the guarantee of impartial

findings:

"The reasonableness of the agency of the national courts in cases in which the State tribunals cannot be supposed to be impartial, speaks for itself. No man ought certainly to be a judge in his own cause, or in any cause in respect to which he has the least interest or bias. This principle has no inconsiderable weight in designating the federal courts as the proper tribunals for the determination of controversies between different States and their citizens."

82. The Federalist Papers number 83 discussed trial by jury as a guard against corruption:

"The excellence of the trial by jury in civil cases appears to depend on circumstances foreign to the preservation of liberty. The strongest argument in its favor is, that it is a security against corruption."

And

"But making every deduction for these considerations, the trial by jury must still be a valuable check upon corruption."

83. In the Federalist Papers number 83 the proper use of Equity jurisdiction is found:

"My convictions are equally strong that great advantages result from the separation of the equity from the law jurisdiction, and that the causes which belong to the former would be improperly committed to juries. The great and primary use of a court of equity is to give relief IN EXTRAORDINARY CASES, which are EXCEPTIONS to general rules."

Noted below is that "title to the custody" issues followed strict rules at law.

84. And again in number 83 we find the concern that Equity will overcome the right to a trial

by jury:

"The nature of a court of equity will readily permit the extension of its jurisdiction to matters of law; but it is not
a little to be suspected, that the attempt to extend the jurisdiction of the courts of law to matters of equity will not
only be unproductive of the advantages which may be derived from courts of chancery, on the plan upon which
they are established in this State, but will tend gradually to change the nature of the courts of law, and to
undermine the trial by jury, by introducing questions too complicated for a decision in that mode."

85. In the Federalist Papers, Publius puts forth the argument that all governments tend to

tyranny. George Santayana echoes this in his book "Dominations and Powers".

86. In Federalist Papers #80, Alexander Hamilton paralleled a Common Law maxim when he

noted:

"The reasonableness of the agency of the national courts in cases in which the State tribunals cannot be
supposed to be impartial, speaks for itself. No man ought certainly to be a judge in his own cause, or in any
cause in respect to which he has the least interest or bias. This principle has no inconsiderable weight in
designating the federal courts as the proper tribunals for the determination of controversies between different
States and their citizens."

Applicable here since federal funds are being provided to the states based on certain divorce

statistics, that the state can no longer adjudicate divorce cases.

## Due Process

87. Multiple Due Process and Process violations are discussed in the above Forward.

88. The cornerstone of Due Process is fundamental fairness. Since the court denied me a

place on the docket in April of 2004 because I was not an attorney I have been denied basic

fairness.

89. Because the judiciary determines the child support formula, judges the cases, oversees the

collection of monies, and benefits from the collections based on Federal Incentives, the right to

impartial Due Process has been questioned.

90. Under the First Amendment to the US Constitution I have a secured right "to petition the Government for a redress of grievances". In this case the US Federal Judiciary for a redress of multiple grievances, to be provided a full and fair answer using foundational and organic rules of law which I claim has been denied in state court, and to be provided a remedy.

## Notice to Parties

91. Defendant now and hereby provide his formal Notice of the above to all interested parties, of record or otherwise, within and surrounding the above-encaptioned state court proceedings.

## Summary and Prayer

92. Request for clarification - Did this court, in remanding the issues to state court expect the state court to provide a full and complete explanation – citing foundational authority and foundational and organic rules of law - as to why this property rights has been taken away and not just pointing out cases where the property issue was not used to make a determination?

93. This court should honor the default judgement.

94. Defendant reiterates that his request for removal to this Court is not just about a supported and reasonable *expectation* of the future manifest deprivation of his various civil rights within said state court, but also that such a deliberately unlawful pattern of the same is well established.

95. Without the immediate intervention, and the exercise of full jurisdiction and authority by this Honorable Court in removing said lower state proceedings, the Defendant will be otherwise subjected to egregious denial and inability to enforce in said state court one or more rights under the laws providing for the equal rights of citizens of the United States, and will be likewise unlawfully forced to suffer manifest and irreparable injuries therein, without reasonable remedy.

WHEREFORE, the undersigned Defendant, Mark Cimini, now pray for removal of the above-encaptioned state court proceedings into, and under, the jurisdiction of this United States District Court, with all speed, and for all other relief deemed just and proper in the premises.

Respectfully submitted,

_Mark Cimini_

Mark Cimini

## VERIFICATION

I hereby declare, verify, certify and state, pursuant to the penalties of perjury under the laws of the United States, and by the provisions of 28 USC § 1746, that all of the above and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed at Westford, MA, this $23$ day of July 23, 2005.

_Mark Cimini_

Mark Cimini

## CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of July, 2005, a true and complete copy of the foregoing petition for removal, by depositing the same in the United States mail, postage prepaid, has been duly served upon all parties of record in the lower state proceedings, to-wit:

Margaret Cimini
5 Sand Beach Road
Westford, MA 01886

and, that the same is being also filed this same date within the lower state trial court proceedings.

_Mark Cimini_

Mark Cimini

Mark Cimini
12 Maple Road
Westford, MA 01886
(978) 692-4556