## District Court of the United States
## Massachusetts District

FILED
IN CLERKS OFFICE

2006 JUN 16  P 2: 04

U.S. DISTRICT COURT
DISTRICT OF MASS

Mark Cimini,

        Plaintiff,

Vs.

Margaret Cimini

        Defendant,

**CASE No.** 05-10125 RCL

**Motion for Reconsideration**

State court cause no.:    97D-4115-DV1

I have had no formal notice of the disposition of the motion I filed back in December. I have, through an email learned that the motion was denied but received no findings of fact or conclusions at law for said dismissal. I am writing this motion for reconsideration 'in the blind'. I request this court please provide me with findings of fact and conclusions at law for the previous motion and this one.

I had requested that if the court did not want to continue to consider the matter under the old case number to notify me and I would re-apply under a new number. Since I received nothing from the court I'm left to assume that the court wishes to continue under the old number.

## Constitutional Issue Raised

The question herein is "The Blending Common Law and Criminal Law into Equity", unlawful restraints on personal liberty, and the failure of Process and Due Process in the Massachusetts Courts. The US Supreme Court has always ruled that the blending of Common Law into Equity is unlawful and a violation of the Constitution. The blending of Criminal jurisdiction into Equity is also unlawful and is also a violation of the Constitution. *Heretofore*, Child Support had been adjudicated under Common Law with the right to a trial by jury both here and in England. *Heretofore*, all family law was handled under Common Law adjudication except for property division following a divorce, both here and in England. Divorce itself was a criminal matter at the signing of the state Constitution and only subsequently became a civil matter; therefore, divorces, per the state Constitution, also have the right to a trial by jury. *Heretofore* the state could not interfere wit personal liberty except for wen one party had committed a crime.

## Jurisdiction

Respectfully, regardless of the subject matter of 'domestic relations', the Federal Courts do have jurisdiction over unlawful takings of property, lack or failure of Due Process, and illegal restraints on personal liberties. Also the court should note the recent Supreme Court ruling of *Marshall v. Marshall*, USSC No. 04-1544, (2006) and *Exxon Mobil v. Saudi Basic Industries*, 544 US ___ (2005)

The Federal Courts explicitly have jurisdiction over issues to include the unlawful takings of property,

violations of Personal Liberty, and violations of Due Process. Since the state now adjudicates matters under equity without the sacred right to a trial by jury as was *heretofore* done under Common Law jurisdiction, the court's orders in these matters are void. Thus the state, various state actors, and others, to include the Defendant(s), have taken property, constrained personal liberty, operate without Due Process under color of law, color of authority for their enrichment. These are Federal crimes as well as Federal civil matters.

Rooker-Feldman is inapplicable to the general constitutional challenge raised in the complaint pursuant to Exxon Mobil at 544 and *DC Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The Younger abstention is inapplicable pursuant *to New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989) ("NOPSI"). NOPSI as applied here is discussed in *Wexler v. Lepore*, 385 F.3d 1336, (11th Cir. 2004) citing *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995); *Marks v. Stinson*, 19 F.3d 873, 882 (3rd Cir. 1994*); Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984). Parallel state and federal court proceedings based on the same set of facts is permissible. No "undue" interference with state court proceedings will occur by this court assuming its proper jurisdiction.

Dismissal is improper under *Quackenbush v. Allstate Ins. Co.*, 116 S. Ct. 1712 (1996). The District Court lacks authority to dismiss an original jurisdiction action which seeks legal relief. Here, the Plaintiff requests damages pursuant to 42 U.S.C. (1983).

Since this there is an original federal question the court "must" take the case absent an "expressed" congressional exclusion pursuant to *Breuer v. Jim's Concrete of Brevard, Inc.*, USSC 2003.

## History of This Case

January 2000 the Plaintiff and Defendant were divorced without the right to a trail by jury.
Aprill 2004 your Plaintiff was denied a right to a hearing by the clerk's office at Middlesex Count Probate and Family Court in Cambridge, MA for a motion for modification of custody and modification of Child Support
During 2004, the Massachusetts Department of Revenue (hereafter DOR) repeatedly sent claims regarding failure to pay Child Support but refused your Plaintiff the right to any hearing let alone a right to a trial by jury as demanded by your Plaintiff.
In early 2005 the DOR took monies without either a hearing nor a judge's signature on the forms. The removal to Federal Court was your Plaintiff's attempt to get a hearing and Due Process.

## History of Family Law

*Heretofore,* all family law matters were Common Law adjudications.

*Heretofore*, divorce, custody, and child support were separate actions; the latter two not related to the divorce.

*Heretofore*, a father had an unalienable, absolute natural right to the custody to children born of is marriage (except where questions of paternity arose).

*Heretofore*, custody was determined by the reciprocal natural law obligation to provide for children and the natural right to the guardianship, care, companionship, and custody (hereafter simply custody) under Common Law jurisdiction, see Blackstone and Kent and case cites below. The state now disassociates this natural right.

*Heretofore,* only a criminal act by the father directly against the children, which violated his natural law obligations, could sever this reciprocal natural right to custody based on a natural law obligation; even in the case of divorce bot in America and in England.

*Heretofore*, all issues regarding child support and alimony had the right to a trial by jury.

The Supreme court has ruled that child custody and parens patriae are matters for Common Law adjudication.

A fundamental premise herein is that custody, child support, and divorce had *heretofore* been separate and distinct issues under Common Law jurisdiction. Divorce was a criminal, not civil action. Questions regarding Child Support were heard by a jury of one's peers. Custody was defined by reciprocal natural rights.

The natural right to custody was based on the reciprocal natural law maxim that the expense and effort imposed by the laws of nature (i.e., God's Divine Will per Blackstone) brought with them specific reciprocal natural rights. The obligation of maintaining and preparing a child for an independent life came with it the reciprocal, inalienable, natural right of the parent to care, custody, fidelity, guardianship, services, society, and obedience of their children[1]. It also clear that parents are the natural guardian and parents have the additional natural right of property to protect this God given parent-child relationship.

The Preamble of the Commonwealth of Massachusetts specifically states natural rights – although not enumerated in the Constitution, but are culled from on case law and include at least: the fruit of one's labor (i.e., one's income), property, and life - are the fundamental underpinnings of our social law compact which is the Constitution. Yet the courts now adjudicate these matters (by statute) under equity, devoid of the reciprocal right of custody based on the obligation of support, imposes criminal penalties for non-criminal actions, voids a right of property, and blended jurisdictions.

The State's Constitution, Article XV states that the right to "a trial by jury shall be held sacred" unless "heretofore been otherways used and practiced." Since the state had *heretofore* practiced Child Support under this sacred right and that divorce was previously a criminal matter, not civil, and custody was never a dispute given the strict Common Law rules, a right to a trial by jury is a guarantee under the Constitution for these, and related matters.

---

1  Kent's Commentaries on American Law, Volume 2, *Part IV* - Of the Law Concerning the Rights of Persons , Lecture 29, "Of Parent and Child", "And in consequence of the obligation of the father to provide for the maintenance, and, in some qualified degree, for the education of his infant children, he is entitled to the custody of their persons, and to the value of their labor and services." and "The rights of the parents result from their duties."

Today a judiciary panel determines the child support formula, sits in judgment over the collection of the monies under a court of equity, with no right to a trail by jury, and the judiciary receives an revenue stream from the Federal government as a result of its closed decision process. These circumstances create the clear impression of a conflict of interest within the judicial process.

**Divorce as a criminal act:**

1. The Massachusetts Body of Liberties (1641) the crime of adultery was punishable by death.
2. Divorce was a criminal action not a civil one, *Barber v. Root, 10 Mass. 260 (1813)* ("Regulations on the subject of marriage and divorce are rather parts of the criminal, than of the civil, code; ..." and later "A divorce, for example, in a case of public scandal and reproach, is not a vindication of the contract of marriage, or a remedy to enforce it; but a species of punishment, which the public have placed in the hands of the injured party to inflict, under the sanction, and with the aid, of the competent tribunal, operating as a redress of the injury, when, the contract having been violated, the relation of the parties, and their continuance in the marriage state, has become intolerable or vexatious to them, and of evil example to others.").
3. *Commonwealth v. Putnam*, 18 Mass. 136 (1822), "Notwithstanding the restraints imposed on the husband, he being the guilty cause of the divorce, the dissolution of the marriage contract was total, and not partial, as contended for by the Solicitor-General." And also note "John Putnam was indicted at October term 1821, upon the statute of 1784, c. 40, for the **crime of adultery**." [Emphasis added]
4. *Commonwealth v. Call, 38 Mass. 509 (1839)* "That the facts of which the jury have found the prisoner guilty, do not constitute the crime of adultery."
5. *Heretofore*, divorce could only be granted in response to a criminal action and the father, by natural right was automatically given custody, even if he had committed the crime that ended the marriage[2] due to the obligation to support his children or otherwise stated and "the duty which nature imposes upon him", *Commonwealth v. Briggs*, 33 MA 203 (1834).; *De Manneville v. De Manneville*, 10 Ves. 51 (1804); *Rex v. De Manneville*, 5 East 222, (1804).
6. Subsequent to the signing of the Constitution, divorce became a civil matter. As such the Constitution guarantees a trial by jury over that never *heretofore* practiced civil matter.

**Custody as *Heretofore* Practiced**

7. *Heretofore*, custody was not a civil matter during divorce. Custody was determined based on natural rights of one party who had sole responsibility to support the child, *heretofore*, there was no civil dispute regarding custody. Custody following divorce always went to the father since he had the sole responsibility to support the child. Custody could only be taken from a father should he commit a crime against the child, e.g., abandonment, abuse, or neglect. Blackstone's Commentaries Chapter 16 and Kent's Commentaries Lecture 29.
8. In this Commonwealth and throughout the states it is clearly the case that the obligation to to support children came with it rights or more specifically reciprocal rights or was 'coupled to' or 'has a corresponding right to' the custody of the child(ren). See at least, *McNamara v. Logan*, 100 Ala. 187 (1893); *Ramsey v. Ramsey*, 121 Ind. 215 (1889); *Nugent v. Powell*, 4 Wyo. 173 (1893); *Directors of Poor v. Dungan*, 64 Pa. 402 (1870); *Hornketh v. Barr*, 8 Serg. & Rawle 36 (1822); *Ex parte Boaz*, 31 Ala. 425 (1858); *Washaw v. Gimble*, 50 Ark. 351; 7 S.W. 389

---

[2]*Commonwealth v. Putnam*, 18 Mass. 136 (1822) "... the crime of adultery."

Kent's Commentaries and that these conclusions were based, in part, on Massachusetts case law.

19. To back-up Kent's claims regarding the sacred right to a trial by jury, sticking with just MA case law, we find at least: *Hanover v. Turner,* 14 Mass 227 (1817); *Milford v Worcester,* 7 MA 48 (1810); *Dalton v. Bernardston* , 9 Mass 201 (1812); *Shirley v. Watertown,* 3 Mass. 322 (1807); *Wightman v. Coates,* 15 Mass. 1 (1818); *Middleboroulh v Rochester,* 12 MA 363 (1815); *Commonwealth v. Putnam* 18 MA 136 (1822); *Angel v. Mclellan,* 16 Mass. 28 (1819); *Baldwin v. Foster,* 138 Mass. 449 (1885); *Foss v. Hartwell,* 168 Mass 66 (1897).

20. The cases above include the right to a trial by jury involving support issues in divorce, separation, and by third parties.

21. For example, in *Hanover,* supra, a trial by jury determined if the husband had treated the wife cruelly and if the wife had left the husband for "justifiable cause" and if support was permitted.

22. British law also provided for a trial by jury in disputes over child support, see *Bazeley v. Forder,* L. R. 3 Q. B. 559 (1868); *Rawlyns v. Vandyke,* 3 Esp 252; *Houliston v. Smyth,* 3 Bing 127 (1825)..

## Blending into Equity:

23. *Bigelow v. Bigelow,* 120 Mass. 320 (1876) is used by the state in its claim that divorce, custody, and child support were *heretofore* practiced without a trial. *Bigelow,* at best only shows a husband who abandoned his wife and children was subject to criminal sanctions where the obligations of support no longer carried the natural right to the guardianship, care, custody, and companionship. *Bigelow* seems to be the first case where the right to a trial by jury was blended into an equity decision by the court.

24. In fact when the Commonwealth began giving married women equal rights to their children, see *Baldwin v. Foster,* 138 Mass. 4 (1885) ("Under our statutes, the rights of the father and mother, in the absence of misconduct, are equal, ..."), following a divorce, the state failed to impose the reciprocal obligation of support on them, see *Dumain v. Gwynne,* 92 Mass. 270 (1865 ) ("To what extent these rights impose obligations on the mother in respect to the maintenance of the children has never been determined.").

25. In both *Smith's Case,* 322 Mass. 186 (1947) ("...the general principles governing the civil liability of a father to furnish support to a minor child who is living apart from him. We have not discussed the somewhat different and more drastic principles governing the criminal liability of a father to support a minor child ...").

26. In *Bazeley v. Forder,* L. R. 3 Q. B. 559 (1868), ("It is now well established that, ..., there is no legal obligation on the part of the father to maintain his child [if the child is living apart from him], unless, indeed, the neglect to do so should bring the case within the criminal law") that criminal wrongdoing which required the state to rescue the child created a criminal obligation of support as per *Bigelow,* supra, which was different than his civil responsibilities.

27. The right to a trail by jury for divorce – NOT the separate and distinct issues of child support and custody, just the issue of divorce - was briefly allowed between 1855 (Statutes 1855, Chapter 56) and 1877 (Statutes 1877, Chapter 178) about the time divorce became a civil matter.

28. *Bigelow* blended the formally criminal divorce proceedings with the right to a trial by jury over child support disputes as shown above.

29. *Tornroos v. R. H. White Co.,* 220 Mass. 336 (1915) "It has been the tendency of our decisions and the positive trend of our statutes to ameliorate the common law disabilities of married

women. *Nolin v. Pearson, 191 Mass. 283, 77 N. E. 890, 4 L. R. A. (N. S.) 643, 114 Am. St. Rep. 605, 6 Ann. Cas. 658; Bunnell v. Hixon, 205 Mass. 468, 91 N. E. 1022; Wing v. Deans, 214 Mass. 546, 102 N. E. 313.* She now stands before the law almost, if not quite, on the same footing as the husband as to all property and business rights, domestic privileges and family immunities, though not charged with equal responsibilities. In case of discord or separation, she has the same  rights as the husband to custody of children. R. L. c. 152, § 28; Id. c. 153, § 37. She is made responsible for pauper support of her children equally with her husband, except that she is exempt from the liability to criminal prosecution in this regard which rests upon the husband. R. L. c. 81, § 10. St. 1909, c. 180, imposes upon both husband and wife penalties for criminal neglect of their children, while Uniform Desertion Act (St. 1911, c. 456) § 1, makes either the father or mother liable to severe punishment for desertion or willful refusal properly to care for and rear their children. It follows that the right of the wife to maintain an action in a case like the present, even though the husband is living, may rest, also, upon the natural rights and obligations of a mother thrown upon her own resources and compelled by the wrongful act of the husband to assume the duties and discharge the obligations of both parents."

## Natural Rights

30. The state is prohibited from making significant changes to natural rights yet has completely disassociated the natural right to custody from the reciprocal obligation of support. This disassociation is UNCONSTITUTIONAL. See, *Sawyer v. Davis*, 136 Mass. 239 (1884), ("Slight infractions of the natural rights of the individual may be sanctioned by the Legislature under the proper exercise of the police power, with a view to the general good. Grave ones will fall within the constitutional limitation that the Legislature is only authorized to pass reasonable laws.")

31. Since this natural right based, Common Law method for adjudicating divorce, custody, and child support under Common Law jurisdiction which acknowledges the reciprocal natural right relationship between the obligation to support the children and the natural right to the guardianship, custody, companionship, and care of the children is no longer practiced as a criminal matter, the *heretofore* clause could no longer be a valid exception in divorce, custody, and child support hearings.

32. Now, however, Massachusetts practices custody and parens patriae under Equity jurisdiction. This "blending" or conversion of law is unlawful regardless of any supposed sanction by the legislature. Divorce, custody, nor child support were *heretofore* practiced under equity jurisdiction.

33. The Best Interest of the Child determination is based on an equity variant of parens patriae, see, at least *E.N.O. v. L.M.M.*, 429 Mass. 824 (1999), which is in direct contradiction of *In re Burrus*, 136 US 586 (1890) and *In re Barry*, 42 F 113 (1844) where it was explicitly stated that *parens patriae* requires Common Law jurisdiction.

34. Parents held title to their children in 1760 (the date Thomas Jefferson said our laws diverged from English laws), 1776 (the Declaration of Independence), 1780 (the signing of the state Constitution), and 1789 (the signing of the Federal Constitution).  Children were, per the Common Law, a right of property, see *Purinton v. Jamrock*, 195 Mass. 187 (1907). The right of property is another natural right.  This natural right of property existed at the signing of the Constitution remain a natural right today and is protected by both Constitutions.

35. Rights to property are both natural rights and Constitutionally protected rights.

**Blending Jurisdiction:**

36. In *Burrus*, supra, the US Supreme Court stated, relying heavily on *Barry*, supra, that the Federal Courts did not have Common Law jurisdiction; therefore, the Federal Courts, to include the Supreme Court, could not intervene in custody or as parens patriae matters since both of these required Common Law jurisdiction. The Federal decision used Massachusetts case law to support its claim regarding Common Law jurisdiction. *Burrus* relied so heavily on *Barry* that *Barry* was appended to the *Burrus* decision.

37. Child Support had the Common Law right to a trial by jury.

38. The distinction between law and equity cannot be blended or obliterated by state legislation. *Thompson v. Railroad Companies*, 73 U.S. (6 Wall.) 134 (1868). Also see *Scott v. Neely*, 140 U.S. 106, 109 (1891); *Bennett v. Butterworth*, 52 U.S. (11 How.) 669 (1850); *Lewis v. Cocks*, 90 U.S. (23 Wall.) 466, 470 (1874); *Killian v. Ebbinghaus*, 110 U.S. 568, 573 (1884); *Buzard v. Houston*, 119 U.S. 347, 351 (1886); *Hipp v. Babin*, 60 U.S. (19 How.) 271, 278 (1857); *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932); *Scott v. Neely*, 140 U.S. 106, (1891); *Hershfield v. Griffith*, 85 U.S. 657, (1873), (Hershfield now brought the case here by appeal , assigning among other errors the blending of equity and common-law jurisdiction.")

39. Federal statutes prohibiting courts of the United States from sustaining suits in equity where the remedy was complete at law served to guard the right of trial by jury and were liberally construed. *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 94 (1932). Also see *Clark v. Smith*, 38 U.S. (13 Pet.) 195 (1839); *Holland v. Challen*, 110 U.S. 15 (1884); *Reynolds v. Crawfordsville* Bank, 112 U.S. 405 (1884); *Chapman v. Brewer*, 114 U.S. 158 (1885); *Cummings v. National Bank*, 101 U.S. 153, 157 (1879); *United States v. Landram*, 118 U.S. 81 (1886); *More v. Steinbach*, 127 U.S. 70 (1888). *Cf. Ex parte Simons*, 247 U.S. 321 (1918).

40. Legal claims must be tried before equitable ones, see *Dairy Queen v. Wood*, 369 U.S. 469 (1962).

**PersonalLliberty:**

41. That *heretofore*, a significant concern for the court was to free the innocent party from any restraint on personal liberty, see at least *Doole v. Doole*, 144 Mass. 278 (1887); *Bigelow*, supra; *Beckwith v. Bean*, 98 U.S. 266 (1878); *Kavanaugh v. Kavanaugh*, 146 Mass. 40 (1888); *Briggs*, supra; *Baldwin v. Foster*, supra; *DeMarzo v. Vena*, 330 Mass. 118 (1953) *; Welker v. Welker*, 325 Mass. 73 (1950); *Stricker v. Scott*, 283 Mass. 12 (1933).

42. Not only was it *heretofore* practiced that the innocent party of a divorce had the right to be free from any restraints on the natural right of personal liberty; the part who was guilty of a crime, e.g., adultery, could have constraints placed on their personal liberty.

43. Now the state places arbitrary restraints on the personal liberty of both litigants in divorce proceedings, without a finding of criminal wrongdoing.

44. *Heretofore*, the innocent party could impose restraints on the guilty party's personal liberties since the guilty party had 1) violated a contract, and 2) committed a crime against them, which permitted remedy.

45. Personal liberty is both a natural right and a Constitutional right. See at least *US v. Cruikshank*, 96 U.S. 542 (1875), ("The rights of life and personal liberty are natural rights of man. 'To secure these rights,' says the Declaration of Independence, 'governments are instituted among men,

deriving their just powers from the consent of the governed.' The very highest duty of the States, when they entered into the Union under the Constitution, was to protect all persons within their boundaries in the enjoyment of these 'unalienable rights with which they were endowed by their Creator.'").

46. "An unconstitutional act is not law, it confers no rights, imposes no duties, affords no protections, creates no office. It is, in legal interpretation, as inoperative as if it had never been passed", *Norton vs. Shelby County* 118 US 425 (1886)

**Marriage as a Contract:**

47. Marriage is a contract. The state in adopting the Bolshevik jurisprudence model[4] known as the Wisconsin Model[5] did violate the US Constitution's prohibition of impairing the obligation of contracts. See Barber, supra; *Commonwealth v. Putnam*, 18 Mass. 136 (1822); *Martin v. Commonwealth*, 1 Mass. 347 (1805); *Stebbins, v. Palmer*, 18 Mass. 71 (1822); *Dean v. Richmond*, 22 Mass. 461 (1827); *Bursler v. Bursler*, 22 Mass. 427 (1827); *Travers v. Reinhardt, 205 U.S. 423 (1907)* ("If I were to express what I collect from the different opinions on the subject I should rather be inclined to express the rule in the following language: that cohabitation as husband and wife is a manifestation of the parties having consented to contract that relation *inter se*.").

## Prayer for Relief

48. That this court acknowledge that the blending of Common Law and Criminal matters into Equity is unlawful and Unconstitutional.

49. That this court acknowledge that there were significant lapses in the Process and Due Process rights of your Plaintiff which caused him harm.

50. That this court acknowledge that the taking of property without a trial is a Federal issue and a violation of Federal law.

51. That this court acknowledge that the restraints on personal liberty are done by a court of void jurisdiction and are both unlawful and Unconstitutional.

52. That this court acknowledge that both the Natural law Obligation and guardianship/care/custody/... are protected under natural rights and are reciprocal rights.

53. That this court explain how it is not impairing an obligation of a contract where the marriage contract had bound the husband to support all the children from the marriage and thus entitled him to the natural right of custody.

54. That this court acknowledge that subsequent to the signing of the state Constitution, married women gained rights with respect to their children and hence created a civil custody dispute where none had *heretofore* existed..

---

[4] "No-Fault Divorce: Born in the Soviet Union?", Journal of Family Law, University of Louisville School of Law, Volume Fourteen 1975 Number One

[5] It was during this period that Irwin Garfinkel, head of the Wisconsin Institute for Research on Poverty, imported a suite of Soviet Russian policy that has become known to us as "The Wisconsin Model". ("The Child Support Guideline Problem" (1998), Roger F. Gay, MSc  and  Gregory J. Palumbo, Ph.D. ) The Wisconsin Model became a center-piece for the national child support and welfare reform movement. A slightly reformed version of the Wisconsin and Georgia child support guideline still survives as Article 81 of The Russian Family Code." From: *The Constitutionality of Child Support Guidelines Debate, Part II*, by Roger F. Gay, Project for the Improvement of Child Support Litigation Technology. http://www.geocities.com/capitolhill/5910/FatherMag/ResponseToMorgan_2.htm

55. That this court acknowledge and explain the contradiction between *Bigelow*, supra, and the statements in Kent's Commentaries and the cases presented (e.g., *Turner*, supra), to include the English cases presented above.

56. That this court acknowledge that *Bigelow*, supra, imposes a criminal sanction for desertion and is instantly distinguishable from this case.

57. That this court acknowledge the right to a trail by jury of support issues post- and pre-*Bigelow*..

58. That this court acknowledge that since the statutes no longer permit the sacred right to a trial by jury over child support, the statutes are Unconstitutional and all previous orders are therefore void.

59. That this court recognize that no-fault divorce impaired the obligation of contracts and is Unconstitutional.

60. That this court recognize income is protected under natural rights and therefore is protected under the Constitution and required strict scrutiny.

61. That this court acknowledge that all action under Unconstitutional laws are void in their first instance and are not laws and offer no protection.

62. That this court end any support and declare void any previous order but the Probate Courts.

63. That this court grant a trial by jury on the above issues.

64. That this court provide findings of fact and conclusions at law should this motion or any part thereof be denied.

Signed this 10th day of June 2006 under the pains and penalty of perjury.

DATED: 10 June 2006
SEAL:

Dated this 10 June 2006

Mark Cimini
Pro Se, Sui Juris
Middlesex County Judicial District
12 Maple Road
Westford, MA [01886]
(978) 692-4556

**CERTIFICATE OF SERVICE**

I hereby certify that, on this ___10___ day of June, 2006, a true and complete copy of the foregoing Motion for Reconsideration, by submitting it to applicable parties listed below.

Mark Cimini

Mark Cimini
12 Maple Road
Westford, MA 01886
(978) 692-4556
m.cimini@att.net

| John Buonomo<br>Probate and Family Court<br>208 Cambridge street<br>East Cambridge MA, 02141 | Gerald Venezia<br>348 Park Street South 201<br>North Reading, MA 01864 |
|---|---|
| Annapurna Balakrishna, room 2019<br>Assistant District Attorney<br>One Ashburn Place<br>Boston, MA 02108-1598 | |